UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DUANE A. NORRIS, TAMMY GALLOWAY, individually and as the guardians of the minor children, B.G., T.N., E.N. and T.N., <br><br> Plaintiffs, <br><br>     v. <br><br> DANIEL BAIN, individually as a Police Officer for the City of Indianapolis, CHARLES BETZ, individually as a Police Officer for the City of Indianapolis, and ROBERT STOCKTON, individually as an Animal Control Officer for the City of Indianapolis, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) CASE NO. 1:04-cv-1545-DFH-TAB |

ENTRY ON MOTION FOR SUMMARY JUDGMENT

On the night of October 10, 2002, Indianapolis Police Officers Charles Betz and Daniel W. Bain arrested plaintiff Duane A. Norris at his home after responding to a call by Animal Control Officer Robert Stockton requesting assistance.  Stockton claimed that a man had threatened him from the porch of the Norris home.  Norris's mother, his partner Tammy Galloway, and four minor children living in the home were ordered out of the family's home and stood on the front porch as Norris was arrested.  Norris and Galloway, as individuals and as guardians of the four minor children, have brought this action under 42 U.S.C. § 1983 against Animal Control Officer Stockton, Officer Betz, and Officer Bain alleging that the officers violated their rights under the Fourth Amendment to the

United States Constitution.  Defendants deny the claims and have filed a motion for summary judgment on all claims.  For the reasons explained below, defendants' motion is granted in part and denied in part.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving parties entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving parties must show there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law.  *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.  See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S.

at 255; *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (reversing summary judgment for defendant in excessive force case).

*Undisputed Facts*

By moving for summary judgment, the defendants have asked the court to apply the law to only the plaintiffs' version of these contested events. The following account of the relevant facts is not necessarily accurate. It is the plaintiffs' version of the events, giving them the benefit of all conflicts in the evidence and any reasonable and favorable inferences from the evidence.

On the evening of October 10, 2002, Animal Control Officer Robert Stockton responded to a complaint of a barking dog at the home of Bill Scott on South Pennsylvania Avenue in Indianapolis. Stockton claims that as he walked toward Scott's house, a man standing on the front porch of a home across the street informed Stockton that he had a rifle and threatened to shoot or kill Stockton. Stockton Dep. at 34-35; Scott Dep. at 7. After Scott answered his door, Stockton asked Scott if he could come inside, explaining that he had heard someone threaten him from across the street. Scott Dep. at 7-9. Stockton then entered Scott's house and called the Indianapolis Police Department ("IPD") for assistance. *Id.* at 10.

Shortly after Stockton requested assistance, IPD officers Daniel W. Bain and Charles Betz arrived at the scene in separate patrol cars. Stockton approached

the officers, informed them of the threat, described the suspect, and pointed them toward the house from which he claimed the suspect threatened him.  Stockton Dep. at 42-43.  This was the home of plaintiffs Duane Norris, his partner Tammy Galloway, and four minor children.  Both Norris and Galloway were at home at the time, as were all four children.  Also in the home were Norris's mother, his nephew, and Norris's friend Tom Hess.  Duane Norris Dep. at 24-25, 29; Galloway Dep. at 19; E.N. Dep. at 8; Hess Dep. at 16.

The officers approached the plaintiffs' home with their guns drawn.  They shined lights at the home and ordered everyone to leave the home with their hands up.  T.L.N. Dep. at 9; B.G. Dep. at 11-12, 18; T.M.N. Dep. at 10-11.  Some of the children ran to the back of the home and told Norris and Galloway that the police had approached the home and were ordering everyone out.  B.G. Dep. at 11-12.  Norris then asked Galloway to go see what was happening.  Duane Norris Dep. at 21; Galloway Dep. at 19.  Galloway, Norris's mother, and the children left the home through the front door and stood on the front porch.  Galloway Dep. at 19-20.  Norris's mother went back into the home to tell her son what was happening outside while Galloway and the children stayed on the porch.  Duane Norris Dep. at 21; Galloway Dep. at 35.

As Norris approached the front door of his home, some of the officers advanced onto the porch.  One of the officers stepped on the toe of one of the children, and the child fell back into the other children.  B.G. Dep. at 20, 36;

T.L.N. Dep. at 13-14.  The evidence conflicts as to whether Norris left the home voluntarily or whether he was forcibly removed from inside his home by Officer Betz.  Stockton approached and identified Duane Norris as the person who threatened him.  Duane Norris Dep. at 23.  The IPD officers then arrested and handcuffed Norris.

Norris claims that the officers used excessive force in arresting him, causing a torn rotator cuff and a bleeding hernia.  Norris was charged with resisting arrest but was never prosecuted.  Additional facts are noted below, keeping in mind the standard that applies to a motion for summary judgment.

*Discussion*

Plaintiffs Duane Norris and Tammy Galloway, on behalf of themselves and the four children, allege that Animal Control Officer Stockton, Officer Betz, and Officer Bain violated their rights under the Fourth Amendment of the United States Constitution.  Plaintiffs seek relief under 42 U.S.C. § 1983, which provides a cause of action against "Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." The court must analyze separately the distinct constitutional claims of different plaintiffs against different defendants, and the court must consider separately the merits of plaintiffs' claims and the defense of qualified immunity.

I.      *Duane Norris's Claim Against Officer Stockton*

Duane Norris has brought a claim against Animal Control Officer Stockton for unconstitutional seizure.  Officer Stockton argues that he cannot be held liable for any wrongful arrest of Norris because he did not personally participate in the arrest.  "Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994).

Plaintiffs have presented a genuine issue of material fact as to whether Stockton falsely reported the threat or falsely identified Norris as the man who threatened him.  Stockton testified that he was responding to a complaint from a nearby house, and that as he walked from his car to the porch of that house, a man standing across the street on Norris's porch told Stockton that he had a rifle and threatened to shoot him.  Stockton Dep. at 35-38.  Bill Scott, the man to whose house Stockton was responding, testified that Stockton approached his door, spoke first about a dog-related complaint, and then asked permission to enter Scott's home, explaining that someone had threatened him.  Scott Dep. at 7-10.  After Stockton informed Scott of the threat, Scott stepped out of his house to look at the Norris home and saw no one.  *Id.* at 12, 16.

Though Officer Stockton testified that a man yelled threats at him from the Norris's front porch, one of the children present in the Norris home testified that,

from his room located at the front of the Norris home, he saw Stockton approach the Scott house but never saw or heard anyone yell anything at Stockton. B.G. Dep. at 14-16; see also Duane Norris Dep. at 25. Norris's nephew, who was present at the front of the home, testified that he did not see or hear anyone yell anything about a rifle. Dane Norris Dep. at 20. Duane Norris testified that he had been in the back of the home in the family room. Duane Norris Dep. at 24-25, 29. Galloway testified that she did not hear anyone threaten Stockton and that she and Norris had been in the back room watching television. Galloway Dep. at 6-7, 19. Another child in the home testified that in the period before the police arrived, he had been sitting with Norris, Galloway, and Hess in the back room of the home. E.N. Dep. at 7-9. Hess testified that he had also been in the back room of the home with Duane Norris playing guitar and watching a movie. Hess Dep. at 16.

In addition to the conflicting evidence regarding Norris's whereabouts at the time Stockton claimed he was threatened, Stockton's version of the story has some other weaknesses. For example, Stockton testified that the porch light from the Norris home helped him to identify the individual who threatened him. Stockton Dep. at 42. One of the children testified that the porch light was not operational at the time. T.M.N. Dep. at 17. Plaintiffs also point out that no gun was ever recovered from the Norris home, and that neither Scott nor any other witness saw or heard anyone threaten Stockton. On the other hand, plaintiffs have not come forward with any evidence that Stockton had any motive to accuse Norris falsely.

Norris has offered evidence that Officer Stockton made a deliberately false report of a threat and falsely identified him.  These actions, if proved at trial, would be sufficient to hold Officer Stockton liable for any resulting wrongful arrest carried out by other officers.  See *McCullah v. Gadert*, 344 F.3d 655, 660-61 (7th Cir. 2003) (stating that a pre-arrest "incident report [could] be actionable if [plaintiff could] show that it contains fabricated information" because the report "led directly to [plaintiff's] detention at the conclusion of his initial court appearance, which was the initial termination of his freedom of movement . . . ."); *Smith v. Springer*, 859 F.2d 31, 34 (7th Cir. 1988) (a plaintiff "can prevail on his § 1983 claim if he shows that the defendants fabricated evidence leading to his false arrest and subsequent unreasonable seizure"), and *Smith v. City of Chicago*, 913 F.2d 469, 472 (7th Cir. 1990) (same), both abrogated on other grounds by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Officer Stockton relies on *Sheik-Abdi*, 37 F.3d at 1249, in which the Seventh Circuit affirmed summary judgment for a defendant paramedic who had requested police assistance in dealing with a combative subject who was later arrested by police officers.  In *Sheik-Abdi*, the plaintiff's wife requested emergency medical assistance for her husband, who had passed out after drinking excessively.  When the paramedics arrived, plaintiff Sheik-Abdi woke up, waved his arms, became agitated, and ordered them to leave.  While one paramedic phoned for police assistance, the other paramedic saw the plaintiff strike his wife and then reported that incident to the officers when they arrived.  Once on the scene, and after

observing plaintiff cock his arm in his wife's direction one more time, the officers arrested him.  *Id.* at 1242.   Under such circumstances, the court held, the paramedic who reported that Sheik-Abdi had struck his wife could not be held liable for any violation committed by the officers because the police, acting on his report, independently determined that probable cause existed for the arrest.  *Id.* at 1248.

This case is different from *Sheik-Abdi* for two critical reasons.  First, the plaintiff in *Sheik-Abdi* did not claim that the paramedic falsely reported his crime. Instead, he claimed that the paramedic ignored his right to reject medical treatment by needlessly calling the police and then failed to intervene when the police wrongfully arrested him.   The Seventh Circuit explained that the paramedic's decision to request assistance with an unruly patient was reasonable, and that the paramedic could not be found liable for failing to prevent the arrest when he had no authority to intervene.   Unlike Sheik-Abdi, Norris has come forward with evidence that shows, if it is believed, that Officer Stockton deliberately gave false information to the police when he reported the threat, and lied again when he identified Norris.   Norris does not allege that Stockton's decision to summon the police was merely unwise.  He argues it was willfully dishonest. The claim against Stockton alleges behavior that is both more culpable and more directly responsible for the arrest than was alleged against the paramedic defendant in *Sheik-Abdi.*

Second, the court in *Sheik-Abdi* took care to emphasize that the paramedics did not invoke the criminal process because they requested the officers' presence only to assist the treatment of an intoxicated citizen. *Id.* at 1248 n.7. In this case, however, Stockton requested assistance and identified the plaintiff both to secure protection and to perform the law enforcement function of apprehending the individual who threatened him. While Stockton apparently did not have arrest powers, he was nonetheless acting in a law enforcement capacity when he responded to the scene. Because Norris has offered evidence tending to show that Stockton, while acting in that capacity, dishonestly reported a crime and identified Norris as the perpetrator of the crime, the reasoning in *Sheik-Abdi* does not shield Stockton from liability in this case.

The question for the court on the defendants' motion for summary judgment is not whether plaintiffs are likely to prove their claim that Stockton made false accusations against Norris. At this stage, the court must draw all reasonable inferences and resolve all evidentiary conflicts in the plaintiffs' favor, and must not make credibility determinations that must be left to a jury. In light of the conflicting evidence regarding the truthfulness of Stockton's report, genuine issues of material fact govern whether Stockton is liable for a deprivation of Norris's constitutional rights, leaving the issue to the province of a jury.

II.     *Duane Norris's Claims Against Officers Betz and Bain*

   A.     *Wrongful Arrest*

Duane Norris also asserts a claim against IPD Officers Betz and Bain for violating his Fourth Amendment right to be free from unlawful seizure by wrongfully arresting him at his home on the night of October 10, 2002.  To prevail on his wrongful arrest claim, Norris must show that Betz and Bain did not have probable cause to arrest him.  *Morfin v. City of East Chicago*, 349 F.3d 989, 997 (7th Cir. 2003); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). A law enforcement officer has probable cause to arrest an individual when a prudent person, knowing the facts and circumstances within the knowledge of the arresting officer, would believe that the individual had committed or was committing an offense.  *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996).  In determining whether probable cause existed for an arrest, the court considers "the facts as they would have appeared to a reasonable person *in the position of the arresting officer*" at the time of the arrest.  *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original).  Although the issue of probable cause in a § 1983 suit commonly presents a question for the jury, "a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them."  *Sheik-Abdi*, 37 F.3d at 1246.

-11-

"When an officer has 'received his information from some person – normally the putative victim or an eyewitness – who it seems reasonable to believe is telling the truth,' he has probable cause."  *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986) (citations omitted); see also *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991); *Sheik-Abdi*, 37 F.3d at 1247.  In *Gramenos*, the court examined whether two officers had probable cause to arrest the plaintiff for shoplifting where the only evidence of the crime was the report of the store's security guard. The guard claimed he saw the plaintiff put some items in his pockets and attempt to leave the store without paying for them.  The report alone was sufficient to establish probable cause, the court explained, because the guard was an eyewitness and described facts to the police that amounted to a crime.  Though a prudent officer might reasonably question a report from someone who claimed to have witnessed a crime that occurred long ago, or a report from a babbling or inconsistent witness, the officers had no reason to question the report of a security guard.  As a matter of law, therefore, the guard's report gave the officers probable cause to arrest.  *Gramenos*, 797 F.2d at 438-39.

The Seventh Circuit applied this same reasoning in *Sheik-Abdi* to determine as a matter of law that the responding officers had probable cause to arrest the plaintiff for battery based only on the eyewitness report of the responding paramedic.  The court explained that a paramedic responding to a request for assistance, like a security guard, was "not just any witness," and police officers should be able to take the word of such persons without worrying about being

"mulcted in damages." *Sheik-Abdi*, 37 F.3d at 1247, quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967).  Because the paramedic "was an eyewitness, the facts he related to the officers (if he told the truth) established a crime, and the officers had no reason to disbelieve [his] statement," the officers had probable cause to arrest the plaintiff.  *Id.* at 1247-48.

For the same reasons, Officers Betz and Bain had probable cause to arrest Duane Norris for felony intimidation.  Under Indiana law, a person commits the crime of intimidation if he "communicates a threat to another person, with the intent . . . that the other person engage in conduct against the person's will . . . [or] that the other person be placed in fear of retaliation for a prior lawful act . . . ."  Ind. Code § 35-45-2-1.  The crime is a Class D felony "if the threat is to commit a forcible felony." *Id.*  The undisputed evidence here shows that Stockton *claimed* a man standing on the Norris's porch had threatened to shoot or kill Stockton and told him he had a rifle.  After Officers Betz and Bain arrived at the scene, Stockton told them about the threat and then identified Norris as the man who threatened him.  See Pl. Response Br. at 5; Stockton Dep. at 35, 42-43.  This eyewitness report and identification therefore provided Officers Betz and Bain with probable cause for Duane Norris's arrest, even if Stockton was deliberately lying, as plaintiffs claim.  As in *Gramenos* and *Sheik-Abdi*, the officers received a report from an eyewitness who described facts that, if true, amounted to a crime.  Plaintiffs have presented no evidence that Betz and Bain had any reason to doubt Stockton's report.  Accordingly, like a security guard or a paramedic, an Animal

-13-

Control Officer responding to a call would be the kind of disinterested witness whom a reasonable officer could believe without being worried that he might be "mulcted in damages." *Sheik-Abdi*, 37 F.3d at 1247; *Gramenos*, 797 F.2d at 439.

Plaintiffs concede that Stockton *reported* that Norris committed the crime of felony intimidation, nor do plaintiffs claim that Betz or Bain had reason to think that Stockton was unreliable. Instead, plaintiffs claim that Betz and Bain failed to investigate the charge properly because they did not interview witnesses or search the Norris home for a gun. This neglect, plaintiffs argue, "could, from an objective standpoint, indicate that they did not believe Stockton's claims." Pl. Response Br. at 15. This is pure speculation and is not sufficient to defeat summary judgment. Plaintiffs' argument, based solely on weaknesses in the investigation, runs afoul of the Seventh Circuit's reasoning in *Sheik-Abdi*. There the court found that the officers had probable cause for the arrest even in light of their failure to perform a full investigation of the arresting charges. Although "evidence of interviews and investigations may be a relevant factor in probable cause analysis," the court explained, "it is not in any way a prerequisite to a finding of probable cause." *Sheik-Abdi*, 37 F.3d at 1246-47. The court found that because the eyewitness report alone was sufficient to establish probable cause, the existence of probable cause was not undermined by the officers' failure to perform a better investigation. The Fourth Amendment "does not define as probable cause whatever good police practice requires, or whatever is necessary to prevail at trial." *Id.* at 1247 n.5, citing *Gramenos*, 797 F.2d at 440.

Because the undisputed evidence in this case demonstrates that Betz and Bain had probable cause to arrest Norris for felony intimidation, the court need not decide whether they had probable cause to arrest him for resisting arrest. Defendants' motion for summary judgment on Norris's wrongful arrest claim against Officers Betz and Bain must be granted.

B.    *Excessive Force*

Duane Norris also claims that Officers Betz and Bain used excessive force in arresting him.  Such claims must be analyzed using the Fourth Amendment's "reasonableness" standard.  The "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  This right is not without limits, however, and a "police officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003), citing *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987); see also *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (the court must look to whether the totality of the circumstances justified the seizure).  In determining whether an officer has used excessive force, the fact-finder must balance the intrusion to the individual with the government interests at stake. This requires consideration of the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others, and whether the

suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

Whether Officers Betz and Bain used excessive force in arresting Norris depends on issues of material fact that must be decided at trial. At the time of the arrest, Betz and Bain were informed by Stockton that Norris had threatened him with a rifle. The seriousness of such a threat could have led a reasonable police officer to be especially cautious in making the arrest. After Norris learned from his mother that officers were ordering everyone out of the home, he approached the open front door with his hands up. He testified that when he was approximately a foot away from the door, one officer reached into the house, grabbed him, pulled him out of his house, and pulled his arm behind his back. He testified that the officers pulled him backwards off the porch so that he had to jump in order to avoid falling, that they handcuffed him, and that after he was handcuffed an officer "pull[ed] my arms up right behind my back real hard." Duane Norris Dep. at 21-23, 56.

Norris claims that, as a result of the force used in the arrest, he suffered a torn rotator cuff and his hernia began bleeding profusely, both of which required medical treatment. *Id.* at 67-68; see also Pl. Ex. 2. Norris also testified that during the arrest he once put his arm to his side, turned to an officer and informed him he had not done anything wrong, and that when the officer pushed him over in a way that made him fear he would fall, he "raised" himself up

-16-

backwards.  *Id.* at 21-23.  Defendants argue that this demonstrates that Norris resisted arrest, despite testimony from Officer Betz and other witnesses that Norris did not resist arrest.  Betz Dep. at 51, 91; B.G. Dep. at 41; Hess Dep. at 28.

Viewing this evidence in a light reasonably most favorable to plaintiff Norris, there is a genuine issue of material fact as to whether the defendants used excessive force in arresting Norris.  The parties dispute whether Norris resisted arrest, which is a key factor in determining whether the force used was appropriate.  The extent of the injuries that Norris claims resulted from the force used, combined with the testimony indicating that force was used against him *after he was handcuffed and not resisting arrest*, could support a finding that the officers used force that was excessive under the circumstances.  Accordingly, the question of whether Betz and Bain used excessive force in arresting Norris will be for the jury to decide.

C.    *Unreasonable Entry into the Home*

Duane Norris claims that the officers violated his Fourth Amendment rights by entering the home without a warrant when an officer reached inside the home and "forcibly yanked" Norris outside.  Pl. Response Br. at 21.  Defendants argue that any warrantless entry was justified by exigent circumstances.[1]

_____

[1]Defendants also argue that any unlawful entry claim is precluded by the plaintiffs' assertions in their complaint that Duane Norris came out of the house with Galloway, Hess, and the four minor children.  This statement may weigh
(continued...)

The Fourth Amendment of the United States Constitution ordinarily requires police officers to have an arrest warrant to enter a home without consent to make an arrest. *Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984). Officers may enter a home without a warrant, however, when they have probable cause for the arrest and exigent circumstances require entry before an arrest warrant can be obtained. *Id.* at 749-50; *Payton v. New York*, 445 U.S. 573, 588-89 (1980); see also *Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688-89 (7th Cir. 2001). Exigent circumstances may justify warrantless entry where, for example, officers are in hot pursuit of a fleeing felon, where the destruction of evidence is imminent, where the entry is necessary to prevent a suspect's escape or to address the risk of danger to the police or other persons inside and outside the dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990). Without a warrant or its constitutional equivalent, "any physical invasion of the structure of the home, 'by even a fraction of an inch,' [is] too much." *Kyllo v. United States*, 533 U.S. 27, 37 (2001), quoting *Silverman v. United States*, 365 U.S. 505, 512 (1961).

A genuine issue of material fact exists as to whether any exigent circumstances justified any entry into the Norris home. As the officers approached, they were aware of Stockton's report that an individual at the home had threatened him. The officers approached the home and ordered that everyone

---

[1](...continued)
against Norris's claims that he was removed from the home, but it is not conclusive by itself. Plaintiffs have come forward with testimony that Betz reached into the home and pulled Norris out.

exit.  Norris did not come out immediately.  Norris testified that after Galloway and the children exited the home, his mother informed him that the officers were asking for him, and he walked toward the open front door of the house with his hands up.  He testified that when he was approximately one foot from the door, the officers asked him if he was Duane Norris and he answered in the affirmative, at which point an officer reached through the doorway into the home and pulled him out.  Duane Norris Dep. at 21-22.

Defendants argue that exigent circumstances existed because they were seeking an individual who reportedly had threatened Officer Stockton and because Norris was among the last to exit the home.  While these facts may tend to support a finding of exigent circumstances, they do not demonstrate exigency as a matter of law, especially in light of the evidence demonstrating that Norris approached the door of his home with his hands up in response to the officers' orders and answered their questions about his identity.  Aside from his initial delay in exiting the home, the actual length of which remains unclear, plaintiffs' evidence tends to show that Norris never indicated an unwillingness to cooperate, appeared armed, or otherwise demonstrated a threat to either the officers or others as he approached the front door of his home.  Because the evidence presents a genuine issue of material fact as to whether the officer needed to pull Norris from the home without waiting either for him to exit or for a warrant, defendants' motion for summary judgment on this claim must be denied.

III.   *Seizure of Galloway and the Four Minors*

Galloway and each of the four minor children also claim that the officers violated their Fourth Amendment rights by unreasonably seizing them at gunpoint as they exited their home.  Defendants argue that they did not seize Galloway or any of the minors, placing their actions beyond the reach of the Fourth Amendment.  Alternatively, defendants argue that if their actions amounted to a seizure of Galloway and the children, such actions were reasonable and did not violate the Fourth Amendment.

A "seizure" occurs for Fourth Amendment purposes where an officer either (1) physically touches an individual, or (2) the individual submits to an officer's intentionally applied assertion of authority.  See *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *California v. Hodari D.*, 499 U.S. 621, 624-29 (1991); *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989).  Generally, "a person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Circumstances that might indicate the individual was not free to leave include the threatening presence of many officers, the use of language or tone of voice by an officer indicating that compliance might be compelled, or the officer's display of his weapon.  *Id.*

A reasonable jury could find that Galloway and the children were "seized" within the meaning of the Fourth Amendment.  Plaintiffs' evidence indicates that Galloway and the children encountered several officers with their weapons drawn shouting at them to come out of the house with their hands up.  Some of the officers pointed their weapons at the home, and in the direction of Galloway and the children once they exited the home and stood on the porch.  By all accounts, Galloway and the children submitted to the officers' authority, exiting the home with their hands up and standing on the porch.  A reasonable jury could easily find here the kind of submission to a show of intentionally asserted authority that amounts to a "seizure" for Fourth Amendment purposes.

Defendants argue that *Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998), shows that Galloway and the children were not seized as a matter of law.  The court disagrees.  In *Schaefer* the plaintiffs' daughter, Kathy Nieslowski, was accidentally shot by a police officer outside her home in the officer's attempt to apprehend her husband.  Mrs. Nieslowski had exited the home during a tense and armed stand-off.  When officers ordered her to "get down," she lay on the floor of the porch.  Soon afterward, however, her husband exited the home with a shotgun and pulled Mrs. Nieslowski back toward the house.  Officers ordered Mr. Nieslowski to put down his gun.  He did not, and the officers then fired.  Their shots killed both Mr. and Mrs. Nieslowski.  153 F.3d at 794-95.  The court found that even if Mrs. Nieslowski had been "seized" when she first complied with the officers' orders to get down on the front porch, no such seizure could have

continued while Mr. Nieslowski took physical control of her and pulled her back inside the house.  Based on this interruption or termination of the officers' control, the court reasoned, Mrs. Nieslowski could not be considered to have been "seized" by police within the meaning of the Fourth Amendment when she was shot.  *Id.* at 796-97.

The court's finding that Mrs. Nieslowski had not been seized was based not on the circumstances of her initial compliance with the officers' commands, but on the fact that her husband had seized her and taken physical control of her at the time the alleged Fourth Amendment violation, the shooting, occurred.  *Id.* at 797.  No such escape or capture occurred in the present case.  Based on the plaintiffs' evidence, Galloway and the children remained compliant with the officers' commands without interruption.  Accordingly, the Seventh Circuit's reasoning in *Schaefer* does not apply to the different facts here.

Defendants' argument that because Norris's mother reentered the home to instruct Norris to come to the door, "[Galloway] and the minors were free to move around and return to the inside the home" is not at all persuasive.  See Def. Br. at 19.  The question is not whether all persons ordered onto the porch believed they were required to stay there, but whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *Mendenhall*, 446 U.S. at 554.  Defendants' suggestion that Galloway and the children were free to move about and to disobey orders shouted

at them by police officers with guns pointed in their direction is not plausible. Plaintiffs have raised a genuine issue of fact as to whether a reasonable person in the situation of Galloway and the children would have believed that he or she was not free to leave, and thus have raised a genuine issue of fact as to whether they were seized by the officers within the meaning of the Fourth Amendment.

On this record, however, whether the seizure was unreasonable under the circumstances poses a much closer question. The undisputed evidence shows that, from the perspective of Officers Bain and Betz, the officers were approaching what they believed was a home with an armed man who had just threatened to shoot another law enforcement officer. The officers could easily conclude that it would be prudent to have others in the household out of the way as they confronted the subject. That step could help both the officers and those others in the household. There is no claim here that any officer intentionally even touched Galloway or any of the children. Any restraint on their freedom of movement was brief and ended after the purpose for the restraint ended, after the officers arrested Norris.

As explained below, defendants are entitled to summary judgment on this claim based on qualified immunity. The court therefore reaches no final conclusion on whether there is a genuine issue of material fact as to the merits of the claim.

IV.    *Qualified Immunity*

The individual defendants have all invoked the defense of qualified immunity to plaintiffs' constitutional claims. A two-part test determines whether a government official is entitled to qualified immunity in a civil suit under § 1983. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Marshall v. Teske*, 284 F.3d 765, 771-72 (7th Cir. 2002). First, a court asks whether the facts alleged demonstrate a constitutional violation when examined in the light most favorable to the plaintiffs. *Saucier*, 533 U.S. at 201. If the facts as alleged reveal no constitutional violation, the inquiry ends and the officer prevails on the merits of the case. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (holding that if there is no constitutional violation, there can be no liability on the part of the individual officer or the government body); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596-97 (7th Cir. 1997). If the facts alleged would amount to a constitutional violation, the court next examines whether the law was "clearly established" at the relevant time. *Saucier*, 533 U.S. at 201; *Marshall*, 284 F.3d at 772. If both questions are answered in the affirmative, the official is not entitled to qualified immunity.

To answer the second question about clearly established law, the court asks whether a reasonable public official who faces the same factual circumstances that the defendant faced would recognize that his actions would violate the Constitution. See *Saucier*, 533 U.S. at 202, 210; *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). Requiring that the right be clearly established does not mean

that the official action in question is protected by qualified immunity unless identical acts have previously been held unlawful.  Unlawfulness, however, must be apparent.  *Anderson*, 483 U.S. at 640.  The violation of an individual's rights is "clearly established" where (1) the violation is so obvious that a reasonable state actor would know that what he was doing violated the Constitution, or (2) a closely analogous case establishes that the conduct is unconstitutional.  *Seibert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001); *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000) ("a plaintiff need not always cite a closely analogous case" to show a violation is "clearly established").

Once a defendant claims qualified immunity, the burden is on the plaintiff to show that the right was clearly established under the circumstances. *Marshall v. Allen*, 984 F.2d 787, 797 (7th Cir. 1993); *Perry v. Sheahan*, 222 F.3d 309, 315 (7th Cir. 2000).  It is important to resolve questions of qualified immunity at the earliest possible stage in the litigation.  *Saucier*, 533 U.S. at 201. The fact-sensitive nature of the examination of the constitutional violation, however, can make it difficult to resolve the issue as a matter of law at the summary judgment stage.  See *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003) (in false arrest case, reversing summary judgment in favor of police officer based on qualified immunity:  "Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.").

A.    *False Arrest Claim Against Officer Stockton*

The evidence offered by plaintiff Norris against Animal Control Officer Stockton, when viewed in a light most reasonably favorable to him, shows a violation of clearly established constitutional rights.  According to Duane Norris, he and his family and friends were relaxing in their home one evening watching television and playing guitar when Officer Stockton arrived in the neighborhood, radioed the IPD for assistance, falsely reported to Officers Betz and Bain that an individual had threatened him from the porch of the Norris home, and falsely identified Duane Norris as the person who threatened him.  Based on Stockton's report, Officers Betz and Bain shouted orders for Norris and his family to exit the home with their hands up at gunpoint in the dark, and arrested Norris.  Norris has presented evidence to support these claims.

At the time of the incident, it was clearly established law that a public official would violate a person's constitutional rights by making intentionally false statements or by otherwise fabricating evidence against an individual under criminal investigation.  In *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988), the Seventh Circuit upheld a jury finding that several police officers and a lab technician were liable to a criminal defendant under § 1983 for concealing information from, and making material representations to, local prosecutors, leading to the wrongful arrest and prosecution of a defendant.  The fact that a prosecutor had pursued the charges could not shield the defendant officers from their responsibility for deliberately supplying false information against the

plaintiff: "If police officers have been instrumental in the plaintiff's continued confinement or prosecution," they "cannot hide behind the officials whom they have defrauded." *Id.* at 994. *Jones* made clear that providing false information against a suspect as part of a criminal investigation subjects an official to liability under § 1983.

Similarly, in *Pennington v. Hobson*, 719 F. Supp. 760, 767 (S.D. Ind. 1989), the plaintiff pursued a § 1983 claim against two officers for submitting a probable cause affidavit containing material misrepresentations to a court that issued an arrest warrant for the plaintiff. The plaintiff claimed that the officer falsely stated that a field test on powder found in plaintiff's car indicated that the substance was cocaine. Although summary judgment in favor of defendants was warranted because plaintiff failed to offer any evidence of his claim, the court made clear that the fabrications alleged by the plaintiff demonstrated a clearly established constitutional violation:

> Plaintiff is correct that a material misrepresentation in a probable cause affidavit is actionable under section 1983. And, qualified immunity does not protect a police officer who engages in such deception: a police officer who knowingly or recklessly submits an affidavit containing false statements concerning an arrestee violates the arrestee's clearly established Fourth Amendment rights.

*Id.* (citations omitted).

As *Jones* and *Pennington* make clear, a reasonable public official would have understood in 2002 that making a deliberately false report of a threat against his

life and falsely identifying the subject would violate the subject's constitutional rights. Settled law at the time of the report, identification, and arrest also demonstrated that Stockton could not be shielded from liability for any fabricated charges by the fact that Betz and Bain executed the arrest, especially in light of evidence that the arresting officers had no reason to doubt Stockton's report and relied upon it in determining whether to arrest Norris. See also *Smith v. Springer*, 859 F.2d 31, 34 (7th Cir. 1988) (a plaintiff "can prevail on his § 1983 claim if he shows that the defendants fabricated evidence leading to his false arrest and subsequent unreasonable seizure"), and *Smith v. City of Chicago*, 913 F.2d 469, 472 (7th Cir. 1990) (same), both abrogated on other grounds by *Heck v. Humphrey*, 512 U.S. 477 (1994); see also *Olson v. Tyler*, 825 F.2d 1116, 1118 (7th Cir. 1987) (if an officer seeking a warrant purposefully or recklessly withholds facts that could negate probable cause, the officer may be liable for violating the victim's civil rights); *Treece v. City of Naperville*, 1998 WL 142391, *11 (N.D. Ill. March 25, 1998) (officer did not have qualified immunity from suit because "a reasonable officer could have understood that falsifying police reports and fabricating charges violated [plaintiff's] rights under the Fourth Amendment").

The issue at this stage is not whether Duane Norris will be able to prove by a preponderance of the evidence that Stockton actually fabricated his report and identification. That is a question for the jury. Because Norris has raised a genuine issue of material fact as to whether Stockton fabricated the report and identification, and because the clearly established law at the time shows that such

conduct would violate Norris's constitutional rights, Stockton does not have qualified immunity from Norris's claim.

B.   *Excessive Force Claim Against Officers Betz and Bain*

As discussed above, Norris has raised a genuine issue of material fact as to whether the IPD officers violated his Fourth Amendment rights by subjecting him to excessive force.  In determining whether such actions would have been a violation under clearly established law, the court must keep in mind its task on summary judgment:  the court must resolve all conflicts in the evidence in favor of the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  See Fed. R. Civ. P. 56(c); *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005).

Norris's version of the events leading up to his arrest is that the officers forcibly removed him from his home, yanked him backward off his front porch, and, *after he was handcuffed,* jerked or otherwise pulled his arms up, causing a torn rotator cuff and causing his hernia to bleed profusely.  Additionally, though Norris was initially charged with resisting arrest, he has presented evidence that he was not resisting the officers.

Well before the time of Norris's arrest, the Seventh Circuit made clear that police officers do not have the right to inflict "wholly gratuitous" force on a subdued suspect who was not resisting arrest.  See *Clash v. Beatty*, 77 F.3d 1045,

1048 (7th Cir. 1996) (dismissing appeal of denial of qualified immunity in excessive force case); see also *Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) (punching a handcuffed suspect, breaking his ribs, and pulling his hair cannot be objectively reasonable force in effecting an arrest).   It was also well established that the use of force unnecessary for an arrest, particularly where force is applied to a suspect who is not fleeing or resisting, and who has been overcome, cannot be considered constitutionally reasonable.   *Hill v. Miller*, 878 F. Supp. 114, 116 (N.D. Ill. 1995) (officers did not have qualified immunity where plaintiff claimed that despite his cooperation, officer pushed him against a police car, causing a hernia, yanked his arm up behind his back, and handcuffed him tightly).

Defendants point to the severity of the crime for which Norris was arrested. That can be an important factor in evaluating the force used to subdue a subject who is fleeing or resisting, but it has little relevance to the treatment of a suspect who has been subdued and handcuffed and who is not resisting arrest.   In other words, police officers are not allowed to use gratuitous force against a suspect – even one suspected of a serious crime – where the suspect has been handcuffed, is not resisting arrest, and otherwise poses no threat.   Although the officers had probable cause to arrest Duane Norris, it was clearly established law at the time of the arrest that this authority did not carry with it the right to use force greater than necessary to effect the arrest.   *Graham*, 490 U.S. at 396.

A jury would of course not be required to credit Duane Norris's version of the events, but it might do so.  This version, which the court must accept for purposes of the present analysis, could demonstrate that the force used against Norris was so excessive that no reasonable officer could have objectively believed otherwise.

C.    *Warrantless Entry Claim Against Officer Betz*

As the court has explained, the evidence could lead a reasonable jury to find that Officer Betz violated plaintiff Norris's Fourth Amendment rights by reaching into his home to remove him for arrest.  No reasonable officer could claim not to be aware that, absent exigent circumstances, a warrantless entry of a home is presumptively unconstitutional.  *Groh v. Ramirez*, 540 U.S. 551, 564 (2004); *Payton*, 445 U.S. at 586-88.  "[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."  *Payton*, 445 U.S. at 590.  Accordingly, the police carry a "heavy burden" in demonstrating an urgent need justifying warrantless entry into a home.  *Welsh*, 466 U.S. at 749-50.  The burden would not likely be met where an individual approaches the officers with his hands up, answering their questions, and complying with their instructions.  Assuming, as the court must in analyzing defendant's qualified immunity defense, that the plaintiffs' evidence is true, a reasonable officer could not have believed that he had the right to reach into Norris's home and remove him without a warrant or

consent.  Accordingly, Officer Betz is not entitled to qualified immunity for the alleged warrantless entry into the Norris home.

>       D.      *Seizure of Galloway and the Four Minor Children*

Plaintiffs Galloway and the four minor children claim that the officers approached their home at night with guns drawn, shouting and ordering everyone inside to come out with their hands up.  They further claim that they submitted to the officers' orders and were then held at gunpoint on the front porch even when it was clear that they were not suspected of any crime and posed no danger to the officers.[2]

The court explained above that a reasonable jury could find that Galloway and the children were seized, but finds much closer the question whether the seizure was unreasonable.  In response to the qualified immunity argument on this claim, plaintiffs have relied only on this court's prior decision in *O'Bryan v. Sellersburg*, 2004 WL 1234215 (S.D. Ind. May 20, 2004).  There the court found a genuine issue of fact as to whether officers violated the Fourth Amendment by seizing one plaintiff when they aimed a gun at her and told her not to move as they approached the house and as she stood in her open garage.  The factual circumstances here are significantly different.  In *O'Bryan*, the officers did not

---

[2]Plaintiffs also claim that one officer stepped on the toe of one of the children, causing the children to fall into one another during the arrest of Duane Norris.  There is no claim that this contact was intentional, and it does not support any constitutional claim against the officers.

have information about firearms or threats with firearms as they had in this case. In this case, the officers also had coaxed Galloway and the children out of the house, and it was reasonable to give them commands intended to keep them out of the way in case trouble developed.

That single, distinguishable district court decision is not sufficient to meet the plaintiffs' burden of showing that the law clearly established that the officers' actions would violate Galloway's and the children's Fourth Amendment rights, particularly in the context of keeping bystanders out of the way. In the initial, potentially volatile moments of encounters between police and civilians, and especially if the officers have reason to be concerned about possible violence, it may be reasonable for them to take command of the situation to ensure the safety of everyone present. For example, when executing a search or arrest warrant, the police can perform sweeps to ensure the safety of those present, can briefly detain those present, and can order those present to move out of the way or to stay where they are. See generally *Michigan v. Summers*, 452 U.S. 692, 701-03 (1981); *United States v. Pace*, 898 F.2d 1218, 1239 (7th Cir. 1990) (police could briefly detain persons present at site of search warrant to take control of situation before searching).

At the same time, such measures to take command can go to unreasonable extremes, depending on a host of factors that may include the degree and length of any seizure, as well as the information the officers have about how dangerous

the situation is likely to be.  To see the variety of issues and problems, compare, *e.g.*, *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (officers acted reasonably in placing bystander in temporary protective detention), and *United States v. Maddox*, 388 F.3d 1356, 1365-66 (10th Cir. 2004) (finding no Fourth Amendment violation in half-hour detention of bystander who arrived at home where arrest warrant was being executed), with *Holland v. Harrington*, 268 F.3d 1179, 1194-97 (10th Cir. 2001) (mixed results on civil Fourth Amendment claims arising from SWAT team "dynamic entry" to serve arrest warrant for misdemeanor charge in a home with children present).  For present purposes, it is not necessary to try to sort out the applicable law in finer detail. It is sufficient to say that the plaintiffs have not met their burden of showing that their brief seizure as officers were arresting Norris violated clearly established law.

### Conclusion

For the foregoing reasons, the court finds that defendants' motion for summary judgment (Docket No. 36) is GRANTED as to Norris's claim against Officers Betz and Bain for false arrest and Galloway's and the children's claims against Officers Betz and Bain for unlawful seizure, and DENIED as to the plaintiffs' remaining Fourth Amendment claims.

So ordered.

Date:  March 21, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Nicholas David Conway
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
nconway@michaelsutherlin.com

Laurel S. Judkins
OFFICE OF CORPORATION COUNSEL
ljudkins@indygov.org

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jfk@rucklaw.com

John C. Ruckelshaus
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jcr@rucklaw.com

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@michaelsutherlin.com